IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| VICKI ANN RAYBURN,<br><br>Plaintiff,<br><br>vs.<br><br>WADY INDUSTRIES, INC.,<br><br>Defendant. | No. C07-1008<br><br>ORDER REGARDING<br>ATTORNEY FEES AND COSTS |

## TABLE OF CONTENTS

I. *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. *BACKGROUND FACTS AND PROCEEDINGS*. . . . . . . . . . . . . . . . . . . 2

III. *ATTORNEY FEES*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Rayburn's Unsuccessful Statutory Claim*. . . . . . . . . . . . . . . . . . 5
    B.   *Rayburn's Successful Common-Law Claim*. . . . . . . . . . . . . . . . . 6

IV. *EXPENSES*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V. *PREJUDGMENT INTEREST*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VI. *BILL OF COSTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VII. *SUMMARY*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII. *ORDER*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

This matter comes before the Court on the Motion for Attorneys Fees, Expenses and Prejudgment Interest (docket number 44) filed by the Plaintiff on August 26, 2008, and the Motion for Court Review of Bill of Costs (docket number 52) filed by the Defendant on September 10, 2008. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. BACKGROUND FACTS AND PROCEEDINGS

On April 5, 2007, Plaintiff Vicki Ann Rayburn ("Rayburn") filed a Complaint (docket number 2) seeking damages against her former employer, Wady Industries, Inc. ("Wady"), and one of its managers, Lori Fey ("Fey").[1] Rayburn claimed sexual harassment and retaliation in violation of Iowa Code Chapter 216 (Count I), sexual harassment and retaliation in violation of Title VII (Count II), and wrongful discharge in violation of public policy (Count III).

Rayburn's claims came on for trial to a jury beginning on August 4, 2008. Following the conclusion of Rayburn's evidence, the Court directed a verdict in Wady's favor on the claim of hostile work environment. Rayburn's claims of (1) retaliation for complaining about a hostile work environment, and (2) wrongful discharge in violation of public policy, were submitted to the jury. The jury found that Rayburn had proved both of her claims and awarded compensatory damages in the amount of $23,750. In addition, the jury awarded $15,000 in punitive damages on the retaliation claim, and awarded $45,000 in punitive damages on the common-law wrongful discharge claim. Pursuant to the jury's verdict, judgment entered in favor of Rayburn and against Wady "in the amount $83,750.00 plus interest as provided by law."

On August 26, 2008, Rayburn timely filed a bill of costs and the instant motion for attorneys fees. The Clerk of Court awarded costs in the amount requested by Rayburn, and Wady then timely filed the instant motion for court review.

## III. ATTORNEY FEES

In support of her motion for attorney fees, Rayburn attached an itemization of services rendered by her attorneys from September 22, 2006 through August 25, 2008.

---

[1] Shortly before trial, Rayburn dismissed Fey as a defendant. *See* Stipulation as to Dismissal of Defendant Lori Fey (docket number 33).

The billing statement identifies 382.35 hours, for a total fee claim of $55,898.50.[2] In compliance with Local Rule 54.1, Rayburn also submitted a summary of time expended in each of six identified categories.[3] The time worked by lead counsel is billed at $150 per hour, while the time worked by "second chair" is billed at $130 per hour. In its resistance, Wady does not challenge the number of hours charged, the hourly rate, or the reasonableness of the claimed fees. Rather, Wady argues that since a portion of Rayburn's recovery is attributable to a state cause of action which does not allow assessment of attorney fees against the losing party, Rayburn is only entitled to a percentage of her claimed fees.[4]

Wady concedes that Rayburn is entitled to recover attorney fees as a result of her successful Title VII retaliation claim.[5] The authorizing statute provides that "[t]he court, in its discretion, may allow the prevailing party" a reasonable attorney's fee. 42 U.S.C. § 2000e-5(k). "Attorney's fees are routinely awarded to a prevailing plaintiff in civil rights cases unless special circumstances render such an award unjust." *Johnson v. Nordstrom-Larpenteur Agency, Inc.*, 623 F.2d 1279, 1282 (8th Cir. 1980). *See also Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (an attorney's fee is ordinarily recoverable "unless special circumstances would render such an award

---

[2] *See* Plaintiff's Motion for Attorneys Fees, Exhibit A (docket number 44-2).

[3] *See* Plaintiff's Motion for Attorneys Fees, Exhibit B (docket number 44-3).

[4] Wady reasons that since Rayburn would be entitled to judgment of $68,750 on the common-law wrongful discharge claim, only $15,000 is solely attributable to the Title VII claim and, therefore, Rayburn should only recover 18% of her attorney fees. Rayburn "takes issue with Defendant's math and method." Even if the Court applies a percentage recovery, Rayburn notes that she would be entitled to recover $38,750 on her Title VII claim, or approximately 46% of the full judgment.

[5] Wady argues, however, that since an attorney fee is not recoverable on the common-law wrongful discharge claim, it should "pay our fair percentage based upon the results and distinguishable claims." *See* Resistance to Plaintiff's Motion for Attorney's Fees and Expenses (docket number 49) at 3.

unjust."). A successful complainant is also entitled to reasonable attorney fees under the Iowa Civil Rights Act of 1965 ("ICRA"). *See* Iowa Code Section 216.15(8)(a)(8).

In this case, Rayburn sought recovery under three theories. First, Rayburn claimed that she was subjected to a hostile work environment and harassed on the basis of sex or gender. If Rayburn had prevailed on that claim, she could have recovered reasonable attorney fees. Rayburn was unsuccessful on her first claim, however, when the Court directed a verdict in Wady's favor at the close of Plaintiff's evidence. Second, Rayburn claimed that Wady retaliated against her for complaining about being subjected to a hostile work environment. Rayburn was a "prevailing party" on that claim and, under both Title VII and the ICRA, is entitled to reasonable attorney fees. Third, Rayburn claimed that she was wrongfully discharged in violation of public policy when she reported violations of a no contact order to the police. Rayburn was successful on her third claim, but Iowa common-law does not provide for attorney fees in these circumstances.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court provided guidance to the trial court in determining attorney fees pursuant to a fee-shifting statute. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. *See also Zoll v. Eastern Allamakee Community School Dist.*, 588 F.2d 246, 252 (8th Cir. 1978) ("Under the Johnson Standards, the minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate.") (referring to *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

In this case, Rayburn claims that 382.35 hours of attorney time were reasonably expended in prosecuting her case.[6] Other than objecting to those hours which relate to

---

[6] According to Rayburn's motion, "[a]ny concern over the possible duplication of effort of Plaintiff's attorneys has already been addressed by voluntary reductions in the
(continued...)

Rayburn's state common-law claim, Wady does not assert that any of the hours were not "reasonably expended on the litigation." Similarly, Wady apparently concedes that Rayburn is seeking "a reasonable hourly rate." Accordingly, the "starting point" suggested by the Court in *Hensley* would be $55,898.50.

### A. *Rayburn's Unsuccessful Statutory Claim*

It must be recalled, however, that Rayburn "prevailed" on only one of her two claims brought under Title VII and the ICRA. Accordingly, the Court must consider whether a downward adjustment is appropriate based on the "results obtained."

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.

*Hensley*, 461 U.S. at 434.

As set forth in *Hensley*, the Court must first determine whether the unsuccessful statutory claim and the successful statutory claim were "related." If the issues on which Plaintiff lost are unrelated to those on which she won, "the unrelated issues must be treated as if they were separate cases and no fees can be awarded." *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (quoting *Jenkins v. Missouri*, 127 F.3d 709 (8th Cir. 1997)). On the other hand, "[w]hen the facts and legal theories overlap . . . rejection

---

[6](...continued)
total time claimed." The motion states that the claim has already been reduced by 40.2 hours, although a review of Exhibit A fails to clearly reflect that adjustment.

5

of one theory 'is not a sufficient reason for reducing a fee.'" *Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008) (quoting *Hensley*).

In this case, Rayburn did not prevail on her claim that she was subjected to a hostile work environment and harassed on the basis of sex or gender. Rayburn did prevail, however, on the related claim that she was fired as a result of her complaining about a hostile work environment. These claims are interwoven and the pretrial and trial time expended on one is inextricably related to the work spent on the other. Accordingly, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. *See also Sturgill*, 512 F.3d at 1036 (attorney fee not reduced when the claims "were inextricably related--they alleged alternative unlawful discharge theories.").

Responding to the second question posed in *Hensley*, the Court concludes that Rayburn achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." On the retaliation claim brought under Title VII and the ICRA, the jury found Rayburn sustained compensatory damages in the amount of $23,750 and punitive damages in the amount of $15,000. This recovery may be considered a substantial award, justifying the fees requested. *See Wal-Mart Stores, Inc.*, 223 F.3d at 772 (attorney fees of $106,832.60 found to be appropriate following a jury award of $25,000). It should also be recalled that Wady does not argue that the claimed hours were not reasonably expended. Accordingly, Rayburn's failure to recover on her hostile work environment claim need not result in a reduction of her attorney fees.

### B. Rayburn's Successful Common-Law Claim

The Court now turns to the argument raised by Wady: "A party cannot recover attorney's fees for wrongful termination in violation of public policy under Iowa's common law and recovery of 100% of fees would, therefore, be unjust." As set forth above, Wady suggests that Rayburn is entitled to recover 18% of her claimed fees, or approximately $10,062.

6

The analytical framework to be applied when considering the effect of pendent state law claims (where recovery of attorney fees by the prevailing party is not authorized) is similar to that applied when considering the effect of unsuccessful claims where attorney fees would have been awarded. That is, if the state law claims are distinct from the fee-producing claims, then the plaintiff is not entitled to recover those fees attributable to the state law claims. If the fee-producing claims and the state law claims are interrelated, however, then a fee reduction is not required simply because time was expended on both a fee-producing claim and a claim which would not allow for recovery of fees. *Wal-Mart Stores, Inc.*, 223 F.3d at 773.

> Even assuming *arguendo* that fees are not recoverable under Arkansas law for Barton's state law claims, we do not believe that the district court abused its discretion in not further reducing the fee award, because Barton's state claims of assault and battery, outrage, and negligent retention shared a common core of facts with her Title VII claims, all of which arose from Ware's alleged sexual harassment of Barton.

*Id.* When claims share a "common core of facts," the Eighth Circuit recognized that a division of hours may not be possible.

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Id.* (quoting *Hensley*, 461 U.S. at 435).

In support of its argument, Wady cites *Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4 (1st Cir. 1993). There, the plaintiffs brought claims for sexual harassment in the workplace in violation of Title VII, and for intentional infliction of emotional distress in violation of state law. The jury returned a verdict in favor of the defendants on the state-law claim, but the Court found in the plaintiffs' favor on the Title VII claim. The Court awarded $1,737.60 in back pay and $12,762 in attorney fees. Citing *Hensley*, the

Court noted that "attempts to allocate hours between claims may be unwarranted where an action involves related legal theories applied to a common core of facts." *Id.* at 7.

> Thus a district court may find that the federal and state claims are so interrelated, and the time spent in preparation of those claims so overlapping, that an attempt to separate the time attributable to one or the other would be futile. (citations omitted) But it does not follow that the district court is *prevented* from eliminating hours attributable to state-law claims where, as here, the court reasonably concludes that there is not a complete overlap and separation is proper.

*Id.*

Thus, the Court must determine in the instant action whether Rayburn's claim that she was fired for complaining of a hostile work environment arises from a common core of facts and is interrelated to her claim that she was fired for reporting violations of a no contact order to the police. Notwithstanding Wady's arguments to the contrary, the Court finds that there is such a relationship between the claims. Under either claim, it was necessary for Rayburn to establish her relationship with John Miller, the background leading to the imposition of a no contact order, and the events which occurred in the workplace. Under Rayburn's federal theory, Wady fired her because she complained about a hostile work environment based on sex or gender. Under Rayburn's state law theory, Wady fired her because she reported violations of a no contact order to the police. Both claims arise from a common core of facts. The relationship between the claims would make it difficult to separate the pretrial or trial hours spent on one from another.

Notably, Wady makes no effort to identify any hours claimed by Rayburn which it believes were related solely to the state law claim. Nonetheless, it would appear that there are hours identified in the itemization which can be associated with the state law claim only. On February 25, 2008, Wady filed a Motion for Partial Summary Judgment (docket number 16), arguing that Rayburn had failed to state a cause of action for wrongful discharge in violation of public policy (Count III). Between March 3, 2008 and March 14,

2008, Rayburn's counsel devoted 38.4 hours to filing a resistance to the motion and incurred an additional hour on April 14, 2008 when the ruling was received and reviewed with Rayburn. At $150 per hour, it would appear that attorney fees of $5,910 were thus attributable directly to the state law claim and, therefore, cannot be recovered. *Phetosomphone*, 984 F.2d at 7 ("discrete tasks performed by plaintiffs' counsel that related only to the state-law claim" were not recoverable). *See also Beard v. Flying J. Inc.*, 2000 WL 33361999 (S.D. Iowa) (Plaintiff's reduction of 28.75 hours attributable to her state claims found to be "fair and reasonable" by the court).

Furthermore, the Court concludes that a further adjustment is required. In addition to those hours associated with Defendant's motion for partial summary judgment, which are clearly related only to the state common-law claim, Rayburn also necessarily incurred additional pretrial and trial hours in litigating the state common-law claim. That is, it was necessary for Plaintiff's counsel to research the claim, draft that portion of the complaint, pursue discovery relating to the common-law claim, and present evidence. It is impossible, however, for the Court to determine precisely the number of hours expended in this regard. After considering all of the facts and circumstances, the Court concludes that a 10% reduction in the remaining hours is appropriate to reflect the work which was necessarily associated with the state common-law claim. *Hensley*, 461 U.S. at 436-437.

In summary, the Court finds that Rayburn is not entitled to recover for 38.4 hours incurred in resisting Defendant's motion for partial summary judgment, or $5,910. That reduction results in an attorney fee of $49,988.50. The Court concludes that a further reduction of 10% is appropriate to reflect the other hours associated with Rayburn's state common-law claim. Therefore, the Court finds that a reasonable attorney fee attributable to Rayburn's successful claim of retaliation is $44,989.65.

## IV. EXPENSES

In addition to attorney fees, Rayburn also claims expenses totaling $1,480.49. Of that amount, $736.31 represents mileage, with an additional $130.58 for two nights'

lodging during the trial. The remainder of the expenses primarily represents photocopy charges, long distance phone calls, and postage. Generally, 42 U.S.C. § 2000e-5(k) allows the award of "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client." *Sturgill*, 512 F.3d at 1036. Wady does not claim that the itemized expenses are not normally charged to a fee paying client and, in fact, does not make any objection to Rayburn's claim for expenses. Accordingly, the Court concludes that Rayburn is entitled to recover her claimed expenses of $1,480.49.

## V. PREJUDGMENT INTEREST

Plaintiff also seeks prejudgment interest on her back pay. "Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers." *Loeffler v. Frank*, 486 U.S. 549, 557-58 (1988). In this case, the jury concluded that Rayburn sustained "lost past earnings" in the amount of $13,750. In its resistance, Wady does not respond to the interest issue.

In seeking prejudgment interest, Rayburn does not suggest how that amount should be determined. If interest is awarded from the date she was discharged (July 10, 2006), for example, then she should receive interest on back pay before it was "earned." The parties stipulated that Rayburn's entitlement to lost past earnings terminated when she suffered a stroke on November 23, 2007 and would have been unable to work at Wady's in any event. Therefore, Rayburn's damages for back pay were necessarily "complete" on November 23, 2007 and the Court concludes that interest should accrue from that date.

The interest rate is equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. 28 U.S.C. § 1961(a). Here, judgment was entered on August 20, 2008. The weekly average for 1-year treasury constant maturities for the week preceding August 20, 2008 was 2.18%.[7] By the Court's

---

[7] *See generally*, http://www.federalreserve.gov/releases/h15/data.htm.

calculation, interest on $13,750 at 2.18% from November 23, 2007 to August 20, 2008 is $222.55. The judgment shall be amended to increase Rayburn's award by that amount.[8]

## VI. BILL OF COSTS.

On August 25, 2008, Rayburn timely filed a Bill of Costs (docket number 43) in the amount of $2,492.35. On September 9, 2008, the Clerk of Court entered costs in the amount requested. Wady then filed a Motion for Court Review (docket number 52) pursuant to Local Rule 54.a.1.E. Wady's only objection is the Clerk's assessment of $1,086.75 for court reporting fees incurred for depositions not used at trial. Wady argues that "those court reporter fees submitted that were not 'necessarily obtained' for use in the case, because they were not read at trial, or otherwise used" were improperly assessed as costs. Neither party cites any authority on this issue.

The bill of costs includes fees of the court reporter for taking the following depositions:

| Lori Fey, Tom Daurelle, and Ray Thurston | $868.50 |
| Brad Koranda | 218.25 |
| Craig Watters | 325.85 |
| TOTAL | $1,412.60 |

The deposition of Craig Watters was read to the jury at the time of trial and Wady concedes that the cost is properly assessed. The other depositions were not used at the time of trial, however, and Wady argues that the cost of those depositions ($1,086.75) should not be included.

Court reporter fees associated with a deposition may be taxed as costs if they were "necessarily obtained for user in the case." 28 U.S.C. § 1920(2). While it is necessary

---

[8] It should be noted that post-judgment interest accrues on the entire amount owed, including prejudgment interest. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991); *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1031 (4th Cir. 1993).

11

that the deposition be obtained "for use in the case," it is not necessary that it be read into evidence at trial or, in fact, that there is a trial. *See, e.g., Zotos v. Lindbergh School District*, 121 F.3d 356 (8th Cir. 1997) (deposition costs assessed following the entry of summary judgment).

Furthermore, the question of whether the depositions were "necessarily obtained" must be viewed in light of the facts known at the time the depositions were taken.

> "The determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use." In other words, the "underlying inquiry is whether the depositions reasonably seemed necessary at the time they were taken."

*Id.* at 363. (internal citations omitted).

Even if depositions are not read into evidence at trial, they may be taxed as costs pursuant to 28 U.S.C. § 1920(2) if they were reasonably necessary and not "purely investigative in nature." *Koppinger v. Cullen-Schiltz & Assoc.*, 513 F.2d 901. 911 (8th Cir. 1975) ("Judge McManus in ruling on the costs recognized that the expense of depositions not used at the trial could be taxed provided they were reasonably necessary to the case and were not purely investigative in nature.").

Lori Fey is vice-president, office manager, and part owner of Wady Industries. Tom Daurelle worked in the personnel department at Wady and played a role in the circumstances leading to Rayburn's termination. Ray Thurston was supervisor on the second shift at Wady and was a key witness to the events leading to Rayburn's termination. The Court concludes that the depositions of these individuals were "not purely investigative in nature," and "were reasonably necessary to the case." Accordingly, the Court finds that $868.50 was properly taxed as costs by the Clerk of Court.

Brad Koranda is the Chief of Police in Maquoketa. His deposition was not reasonably necessary for the prosecution of Rayburn's Title VII claims, but was instead primarily related to her state common-law claim. While Rayburn cannot recover attorney

fees associated with the state common-law claim, appropriate costs may nonetheless be taxed pursuant to 28 U.S.C. § 1920. The deposition of Brad Koranda was reasonably necessary for use in the case. Therefore, the Clerk of Court properly taxed $218.25 for the deposition of Brad Koranda. Wady's motion for court review of the bill of costs will be denied.

## VII. SUMMARY

In summary, the Court concludes that the original judgment of $83,750 should be increased by $222.55, representing prejudgment interest on Plaintiff's recovery for back pay. In addition, the Court concludes that Plaintiff should be entitled to recover attorney fees in the amount of $44,989.65, plus expenses of $1,480.49. Therefore, judgment shall enter in the total amount of $130,442.69. Defendant's objection to the taxing of costs by the Clerk of Court will be denied.

## VIII. ORDER

IT IS THEREFORE ORDERED as follows:

1. Plaintiff's Motion for Attorneys Fees, Expenses and Prejudgment Interest (docket number 44) is hereby **GRANTED**, and the Judgment (docket number 42) shall be **AMENDED** as follows:

> Judgment is in favor of Plaintiff, Vicki Ann Rayburn, and against Defendant, Wady Industries, Inc., in the amount of One Hundred Thirty Thousand Four Hundred Forty-Two Dollars sixty-nine cents ($130,442.69), plus interest at the rate of 2.18 percent per annum from and after August 20, 2008.

2. The Motion for Court Review of Bill of Costs (docket number 52) filed by Defendant on September 10, 2008 is hereby **DENIED**.

DATED this 17th day of October, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA